IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CAROLYN FORD, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>H UNIT FIVE, INC., a Utah Corporation d/b/a GOOD EARTH NATURAL FOODS; T. HUMPHREY FAMILY LIMITED PARTNERSHIP, a Utah limited partnership; and John Does I-X, XYZ corporations and /or limited liability companies I-X,<br><br>        Defendants. | ORDER AND MEMORANDUM DECISION<br><br><br><br>Case No. 2:16-CV-780-TC |

Asserting claims under the Americans with Disability Act (ADA) and state common law, Plaintiff Carolyn Ford alleges that Defendant Good Earth Natural Foods[1] denied her access to its grocery store because the access ramp and the sign posts designating disabled parking spaces do not meet ADA specifications. Good Earth filed two motions: (1) a motion for judgment on the

---

[1] Good Earth Natural Foods is the d/b/a for Defendant H Unit Five corporation; the T. Humphrey Family Limited Partnership is also a Defendant in this case. The court refers to them collectively as "Good Earth."

pleadings regarding the state claims,[2] and (2) a motion for summary judgment on the ADA claims.[3]

The court grants Good Earth's motion for summary judgment on Ms. Ford's ADA claims for the reasons set forth below. But the court declines to exercise supplemental jurisdiction on the remaining state law claims. Accordingly, the court dismisses the motion for judgment on the pleadings as moot.

## PROCEDURAL BACKGROUND

Ms. Ford, who alleges that she is disabled, has recently sued over one hundred local businesses. She typically follows four steps in each of these suits. First, Ms. Ford visits a business's parking lot. While in the parking lot, she notices that the disabled parking signs are not posted at ADA-specified heights. And she finds, as in all of her filings, that she cannot enter the building because the slope of the access ramp is too steep.

Second, Adam Ford, her attorney,[4] visits the parking lots of these businesses and takes measurements of the height at which the signs designating accessible parking spaces are posted. Also, he measures the steepness of the access ramp. He apparently measures along the wing of the ramp where it meets the sidewalk. In other words, his measurements appear to show the steepest slope possible between the parking lot surface and the top of the ramp, rather than measuring along the surface of the parking lot from which the ramp begins to rise. He takes pictures of these measurements.

---

[2] Defs.' Mot. for J. on the Pleadings, ECF No. 39.
[3] Defs.' Mot. for Summ. J., ECF No. 40.
[4] Mr. Ford is Ms. Ford's son. For clarity, the court refers to him as "Adam Ford."

Third, he drafts a complaint alleging that (1) the parking lot has "slopes exceeding the maximum allowed" by the ADA, (2) the business has denied Ms. Ford physical access to the building because the slope of the disabled access ramps does not meet ADA specifications, and (3) "removal of the architectural barriers to access is readily achievable and could be completed by Defendants without significant difficulty or expense." (Pl.'s Compl. 6, ECF No. 2.) He then files the complaint.

Fourth, Ms. Ford threatens the business with an injunction. It appears that most businesses settle these suits rather than face expensive litigation. In exchange for collecting attorney's fees, Ms. Ford drops all of her claims.

Good Earth did not settle. Instead, it challenged Ms. Ford's complaint. Ms. Ford, in response, moved the court for a Rule 34 inspection[5] allowing her to find ADA violations <u>within</u> the premises. (<u>See</u> Mot. to Compel, ECF No. 19.) The chief magistrate judge denied that motion, reasoning that even though Ms. Ford "shops at the store . . . 'regularly,'" she "does not allege that she encountered any accessibility issues in the interior of [Good Earth]. Bare speculation is not enough for the court to order a Rule 34 inspection." (Order 1, ECF No. 28.)

Ms. Ford objected to the chief magistrate judge's order because the order limited her to pursuing only the "allegations in her complaint." (<u>See</u> Pl.'s Obj. to Magistrate's Order Denying Pl.'s Motion to Compel, ECF 29.) The court overruled her objection. (<u>See</u> Corrected Order and Mem. Decision Denying Objection, ECF 38.)

Meanwhile, several discovery deadlines tolled. The last day to serve discovery closed January 13, 2017. Fact discovery closed February 17, 2017. The time for presenting expert

---

[5] <u>See</u> Fed. R. Civ. P. 34(a)(2).

3

witnesses and reports closed March 17, 2017.  (See Scheduling Order 3, ECF No. 17.)  Good Earth moved for summary judgment on June 19, 2017.

## STANDARD OF REVIEW

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(1)(B); see also Justice v. Crown Cork & Seal Co., Inc., 527 F.3d 1080, 1085 (10th Cir. 2008).  Examining that evidence, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Seegmiller v. LaVerkin City, 528 F.3d 762, 766 (10th Cir. 2008).

Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence upon which the jury could reasonably find for the plaintiff."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

> If the party seeking summary judgment carries its initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.  To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.

Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998) (emphasis added) (internal quotation marks and citations omitted).

**Title III of the ADA**

Title III of the ADA defines an individual as "disabled" if that individual: "(A) [has] a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) [has] a record of such impairment; or (C) [is] being regarded as having such an impairment." 42 U.S.C. § 12102(1). Standing, walking, and lifting are examples of major life activities. Id. § 12102(2).

The ADA, moreover, provides remedies for a disabled person against places of public accommodation: "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Id. § 12182(a). "Discrimination" specifically includes "failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." Id. § 12182(b)(2)(A)(iv) (emphasis added).

The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9). The ADA further sets out several factors to be considered in determining whether removal of architectural barriers is readily achievable:

> (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity with respect to the number of its employees; (8) the number, type, and location of its facilities; (9) type of operation or operations of

the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Colorado Cross Disability Coal v. Hermanson Family Ltd. P'ship I, 264 F.3d 999, 1001–02 (10th Cir. 2001) (citing 42 U.S.C. § 12181(9)(A)–(D)).

Last, the ADA authorizes the court to issue a temporary or permanent injunction for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1), 2000a–3(a). A prevailing plaintiff is eligible to recover costs and attorney fees. Id. § 2000a–3(b).

## ANALYSIS

Good Earth makes two arguments in its motion, each of which centers on Ms. Ford's failure to submit evidence. First, Ms. Ford cannot establish that she is disabled within the scope of the ADA. (Defs. Mot. for Summ. J. 1, ECF No. 40.) Second, Ms. Ford cannot show that removal of architectural barriers is readily achievable. (Id. at 3.)

In response, Ms. Ford contends that she is in fact disabled. (Mem. in Opp'n to Mot. for Summ. J. 6–7, ECF No. 43.) She responds to Good Earth's second argument by contending that she "must show the violation of the ADA and suggest it can be fixed [,]. . . [but she] is not responsible for 'proving' what could or could not be fixed 'without much difficulty of expense.'" Id. at 2. She also contends that discovery "must be extended pursuant to court orders and due to non-cooperation of defendants." (Id. at 4.)

## I. Evidence of Ms. Ford's Disability

A "prima facie case of disability discrimination under the ADA" includes a showing that plaintiff "is a disabled person as defined by the ADA." E.E.O.C. v. C.R. England, Inc., 644 F.3d

1028, 1037–38 (10th Cir. 2011) (internal quotation marks omitted). The ADA defines an individual as disabled if that individual: "(A) [has] a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) [has] a record of such impairment; or (C) [is] being regarded as having such an impairment." Felkins v. City of Lakewood, 774 F.3d 647, 650 (10th Cir. 2014) (internal citations omitted).

In Felkins, the named plaintiff presented no medical evidence supporting her disability claims. Id. at 651. Lacking that evidence, the court was left with Ms. Felkins' allegations only. Id. "Such lay evidence," the court held, "is inadmissible in court and thus cannot be used to oppose summary judgment." Id.

Citing Federal Rule of Evidence 701, the Felkins court explained that because Ms. Felkins was not a medical expert, she could not give opinion testimony on issues requiring "scientific, technical, or other specialized knowledge." Id. It gave the following example: "a lay witness with experience could testify that a substance appeared to be blood, but . . . [he] would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma." Id. at 651–52 (internal quotation marks omitted; ellipsis and brackets in original).

Just as it was for Ms. Felkins, so too for Ms. Ford. Ms. Ford claims she

> suffers from pernicious anemia[,] which severely impairs her balance and leaves her unable to stand for more than short periods. [She] has also been diagnosed with Stiff Person Syndrome (SPS), which is a rare disease [that] manifests by the stiffening of the muscles that leaves her with limited ability to bend her legs and walk.

(Pl.'s Compl. 2, ECF No. 2.) But there is no evidence in the record of Ms. Ford's impairment, and she provides no details—other than her allegations in the complaint—about how her

7

condition affects her life activities. She has filed no affidavits. Without evidence that she qualifies as disabled, Ms. Ford cannot defeat summary judgment.

## II. Evidence That Removal of Barriers Is "Readily Achievable"

While the ADA is "silent as to who bears the burden of proving that removal of an architectural barrier is, or is not, readily available," the issue is settled in the Tenth Circuit: "Plaintiff must initially present evidence tending to show that the suggested method of barrier removal is readily achievable under the particular circumstances. If Plaintiff does so, Defendant then bears the ultimate burden of persuasion that barrier removal is not readily achievable." Colorado Cross, 264 F.3d at 1002–03.

In Colorado Cross, a plaintiff argued at trial that removing barriers was readily achievable and called witnesses to support her claims. She called an expert in "historical preservation in architecture and urban design." Id. at 1007. Although plaintiff's design expert did not provide cost estimates, the design expert testified about those estimates based on experience "with similar projects" and answered questions about reports reviewed. Id. The design expert also sketched a "conceptual" drawing for illustrative purposes and answered questions on cross-examination. Id. Next, the plaintiff called a financial expert to testify about the defendant's resources to pay for barrier removal and ramp construction. Id. at 1008.

Nonetheless, the Colorado Cross court determined that the plaintiff had introduced only "evidence regarding speculative concepts for ramp installation rather than evidence that a specific design was readily available." Id. at 1009. The plaintiff's design expert was unaware of the details regarding the actual barrier plaintiff had alleged. Id. And the court held that the plaintiff failed to provide "a specific design which could be easily accomplishable and able to be

carried out without much difficulty or expense." Id.; see also Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1273–75 (11th Cir. 2006) (holding that ADA plaintiffs failed to meet their burden of production showing that removal of barriers was readily achievable and financially feasible for defendant).[6]

While Ms. Ford argues "evidence sufficient to prevail at trial has already been provided," the court has numerous concerns with the photographs provided.[7] (Mem. in Opp'n to Mot. for Summ. J. 5–6, ECF No. 43.) The photographs show a level of indeterminate size measuring along the wing of the access ramp closest to the curb. See id. at 43-3–43-5. In other words, they appear to be photographs of where the slope is likely greatest (the point at which the ramp meets the curb) as opposed to measuring the ramp from where it begins to rise from the parking lot. There is no testimony whether (1) this is the proper area in which to measure the slope of an access ramp, (2) this is the proper method for measuring whether the degree of the slope conforms to ADA requirements, or (3) these measurements are accurate.

Even making the necessary inferences to construe these facts in favor of Ms. Ford, she has not provided the expert testimony required to answer these questions. Accordingly, she cannot provide expert testimony at trial. She has not given details regarding the construction of a ramp. She has not shown that removal of barriers is readily available. And she has not shown that ramp construction is reasonably feasible for Good Earth.

---

[6] But see Molski v. Foley Estates Vineyard & Winery, LLC, 531 F.3d 1043 (9th Cir. 2008). Applying 28 C.F.R. § 36.405 and ADA § 4.1.7(2)(b) to the question of readily achievable removal of barriers in historic facilities, the Molski court interpreted the permissive language of the statute to hold that "the party who believes that compliance [with the ADA] would threaten the historical significance of the building . . . counsels in favor of placing the burden of production on the defendant." Id. at 1048. Ms. Ford does not allege that Good Earth is located in a historic facility.

[7] Ms. Ford has provided only photographs to support her claims.

Lacking expert testimony, Ms. Ford is left with allegations to support her case. That is insufficient because the procedural posture of the case is beyond the point where allegations sustain claims. Ms. Ford then contends in her opposition that "fact discovery must be extended pursuant to court orders and due to non-cooperation of defendants." (Mem. in Opp'n to Mot. for Summ. J. 4, ECF No. 43.)

**III. Discovery Dispute**

Ms. Ford alleges a discovery dispute has prevented her from gathering necessary evidence:

> Defendants' argument can be summed up as saying that if a defendant is successfully in objecting (sic) to discovery and engaging in motion fights until after an original scheduling order set as a discovery deadline, the Court must dismiss the case because discovery was not completed and therefore evidence needed to sustain a claim could not be provided by the original deadline. This would lead to absurd results in litigation as cases would simply be refiled and previous case discovery orders cited as evidence of allowable scope.
>
> [Defendant] has not offered their premises for inspection following the entry of this Court's order during June or July to date—instead Defendants are insisting that fact discovery has closed and the case must be dismissed as they have argued in their Motion for Summary Judgment.

(Id. at 5.)

A. Disclosure of Information Supporting Ms. Ford's Claims

Rule 26(f)(2) of the Federal Rules of Civil Procedure requires parties to confer about "the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case." If parties cannot resolve their differences, they must "make or arrange for the disclosures required by Rule 26(a)(1)." Id. The disclosing party must disclose information "to support its claims or defenses." Id. 26(a)(1)(A)(i). When "a party fails to properly support an assertion of fact . . . the court may grant summary judgment." Id. 56(e)(3).

As early as November 1, 2016, "Defendants expressly told Ford that they would agree to an inspection of any specific items that Ford has a good-faith substantiated belief are noncompliant." (Defs.' Mem. in Opp'n to Mot. to Compel 2, ECF No. 21.) Additionally, the chief magistrate judge allowed Ms. Ford to investigate "the allegations in the complaint." (Order 1, ECF No. 28.) Good Earth did not refuse, and could not refuse, Ms. Ford's discovery requests that fell within the scope of her allegations, and Good Earth invited those requests.

Ms. Ford states that "Defendants have never before questioned [her] disability. They requested no admissions or documents related to her disability during discovery, and they have chosen not to depose her and ask regarding her disability . . . . If Defendants doubted her disability, they could have requested proof via discovery." (Mem. in Opp'n to Mot. for Summ. J. 6, ECF No. 43.)

But it is not Good Earth's burden to prove Ms. Ford has a disability. "A party must, without awaiting a discovery request, provide to the other parties . . . information . . . that the disclosing party may use to support its claims." Fed. R. Civ. P. 26(a)(1)(A)(i). Additionally, Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure requires that parties support their assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials."

> When a motion for summary judgment is made and supported as provided in this rule, <u>an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial</u>. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 n.3 (1986) (emphasis added).

11

A district court may allow extra time for discovery if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). That declaration must specify "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1249 (10th Cir. 2015) (citing Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd., 616 F.3d 1086, 1096 (10th Cir. 2010)).

Failure to submit a "sufficiently detailed affidavit" will result in the denial of Rule 56(d) relief. Birch, 812 F.3d at 1250. And Rule 56(d) protections will not be granted if made in passing mention in a brief. See Ellis v. J.R.'s Country Stores, Inc., 779 F.3d 1184, 1208 (10th Cir. 2015). "[A] party at a minimum must ask the court to refrain from acting on the summary judgment request until additional discovery can be conducted." Id. at 1206 (citing Been v. O.K. Indus., Inc., 495 F.3d 1217, 1235 (10th Cir. 2007)).

Before the close of discovery, Ms. Ford did not present the court with affidavits, interrogatories, or depositions. She also failed to file for an extension of time to carry out discovery. Although she mentioned in her opposition to summary judgment that she wanted to reopen discovery, she has still not moved the court to reopen discovery at this time. (Mem. in Opp'n to Mot. for Summ. J. 4, ECF No. 43.) And she has not argued that there was inadequate time for discovery. She has not presented the court with a reason for excusable neglect, nor has she made a showing of good cause why discovery should be reopened. See Fed. R. Civ. P. 6(b)(1)(B). She has not presented an affidavit or declaration showing why essential facts

supporting her claims were unavailable. Finally, she is not a pro se litigant but a plaintiff with experienced counsel. Good Earth is not required to allow Ms. Ford to conduct discovery several months beyond the deadline, and the court declines to extend the time for discovery.

B. Disclosure of Experts and Expert Testimony

Federal Rule of Procedure 26(a)(2)(B) requires the filing of expert reports "prepared and signed by the [expert] witness."[8] The identity of experts who will present evidence at trial must be disclosed to other parties. Id.

Ms. Ford claims that "evidence sufficient to prevail at trial has already been presented." (Mem. in Opp'n to Mot. for Summ. J. 6, ECF No. 43.) But she has neither identified expert witnesses to support her ADA claims nor asked the court for extra time to identify experts. Even if the court were to find that Ms. Ford would qualify as disabled under the ADA, she has not produced expert testimony on the question of whether removal of barriers is readily achievable, details regarding the construction of a new ramp, or the feasibility of ramp construction for Good Earth. That testimony is essential to her ADA claim. Because Ms. Ford has not presented evidence to support her claims that she is disabled and that the removal of barriers she encountered on Good Earth's premises is readily achievable, summary judgment must be granted to Good Earth.

**ORDER**

For the foregoing reasons, the court orders as follows:

1. Defendant's Motion for Summary Judgment on the ADA claims (ECF No. 40) is GRANTED.

---

[8] See also Fed. R. Evid. 702, 703, and 705.

2. The court DECLINES to exercise supplemental jurisdiction over the state law claims.

3. The Defendant's Motion for Judgment on the Pleadings (ECF No. 39) is DISMISSED as moot.

SO ORDERED this 25th day of September, 2017.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge